Good morning, Mr. Jobe. May it please the Court, I'm Robert Jobe. I'm appearing pro bono today on behalf of Diego Miguel-Miguel, who spent the last eight years of his life in DHS custody fighting efforts to return him to Guatemala, where the BIA itself has found that there is a clear probability that his life or freedom would be threatened. At issue here is the Attorney General's decision in the matter of YL, which established a near irrebuttable presumption that all drug trafficking offenses are particularly serious. Under YL, an individual facing a probability, even a certainty of death, forfeits protection under Section 241b-3 by selling $5 worth of marijuana to a friend, because as the seller, his role could never be considered peripheral. Now, I have no doubt that the Attorney General's ---- KAGAN Is that accurate? JOBE I believe it is, Your Honor. I believe that's entirely accurate. KAGAN Because when you go down the checklist, I mean, I could make a pitch that he fits every single ---- every single criteria on the checklist. JOBE You can't make the pitch that it's ---- that his role was other than ---- was peripheral. Because the Attorney General makes clear ---- KAGAN But is it peripheral to what he actually ---- how ---- what the ---- JOBE Why YL says that ---- KAGAN Is it peripheral to that, or is it peripheral in the sense of a big, large conspiracy and somebody's just a mule? JOBE YL says that even a courier's role is not peripheral. But clearly, somebody who's directly involved in the sale, that's why this man here was found to be, you know, a peripheral to YL, because he was the person that transported the drug. KAGAN Is that the way it's interpreted? JOBE Yes. KAGAN I mean, in other words, if you sell, if you sell, even if it's for $1.50, you're selling. JOBE You're not playing a peripheral role. You are subject to YL. You are not deserving of protection, no matter what the consequence of your removal might be. KAGAN You know, I'm ---- I was focusing on the checklist for the moment. JOBE Yeah. KAGAN Okay. JOBE Now, our view, and it's laid out in our brief, but our view is certainly that this violates international law and it violates the INA. But I want to focus today on the issue of retroactivity, the narrower question presented. And that is, even assuming arguendo that the Attorney General's rule set forth in YL is lawful, can it be applied retroactively to somebody who entered a plea to a crime that subjects him to deportation before that rule was enacted? Now, obviously, the starting point on that is the Supreme Court's decision in 1999, there was, quote, little doubt that alien defendants considering whether to enter into a plea agreement are, quote, acutely aware of the immigration consequences of their convictions. Now, this is exactly that kind of case. When he pled guilty to sale or transportation of a controlled substance in May of 1999, Mr. Miguel was no doubt acutely aware that his plea would likely end him up in removal proceedings. He had already been placed in removal proceedings. That's how he was granted asylum. He was also, or he would have been aware that just four months before he entered his plea, an en banc 15-member panel of the BIA rendered a unanimous decision, unanimous, in matter of SS, noting that its earlier decision in QTMT had been superseded by IRA-IRA, and that aggravated felony convictions resulting in a sentence of less than five years could no longer be presumed to be particularly serious and would not presumptively bar people like him from qualifying for withholding of removal. Now, the government claims repeatedly in its brief, and this is at pages 41 and 42, that even at the time of Mr. Miguel's plea, an aggravated felony conviction was presumed to be particularly serious for purposes of 241b-3. In doing so, it relies on this case QTMT. That case, though, was interpreting the pre-Iran-Iran version of 241b-3. That version of the Act had been repealed some full two years before Mr. Miguel entered his plea. That case has nothing to do with this case. It was repealed, the statute that it was interpreting was repealed two years before he entered his plea. At the time of this man's plea, the law was clear. SS had been decided four months earlier by a unanimous panel of the board, and the law was clear that his crime would not be presumed to be particularly serious and that whoever was going to make the ultimate determination about whether he's sent back home to face persecution was going to determine whether his crime was particularly serious by using the Frantescu factors that this Court's familiar with. And that is, at least initially, what happened in this case. In October 1999, the immigration judge applied the Frantescu factors, applied the board's decision in a matter of SS, and he concluded that Mr. Miguel's offense was not particularly serious. This is at page 593 of the record. The BIA upheld that determination in its March 22, 2001 decision, and this is seen at pages 545 and again at page 90. But after the IJ found that Miguel's crime was not particularly serious, and after the BIA had sustained that finding, and after Mr. Miguel's removal from DHS custody for nearly three years, the attorney general directed the board to refer him a handful of cases, three cases, and then he issued this published opinion, which is designed to broadly affect a whole class of withholding applicants, establishing this presumption that all drug trafficking offenses are particularly serious, and that only, quote, the very rare case involving, quote, de minimis or de minimis, and extraordinary and compelling circumstances could ever rebut the presumption. Applying that new standard, very strict standard, both the BIA and the immigration judge reversed their earlier conclusions and found that Mr. Miguel's conviction was a particularly serious crime, and he was undeserving of protection, even though the BIA had found that he faces a clear probability of persecution upon return to Guatemala. Under Montgomery Ward, a case that has withstood the test of time, and the recent decision in Chang, the stringent standard that Y.L. applies, it just can't be applied to somebody like Mr. Miguel, who pled guilty before the attorney general so dramatically changed the state of the law. The five factors laid out in Montgomery Ward all favor our case of first impression. No way. Matter of Y.L. was not a case of first impression. Quite the contrary. Y.L. itself makes clear that after the BIA had rendered its decision in Matter of S.S., it had consistently refused to apply any sort of presumption that drug trafficking crimes are particularly serious. Y.L. itself reverses three such decisions. Was it an abrupt departure? Yes, it was an abrupt departure, because for three years, beginning under the Clinton administration, for three years the BIA had been saying, no, we're not going to presume, after Ira's amendments, we're not going to presume that any aggravated felonies that resulted in less than a five-year sentence were particularly serious. The third factor is the extent to which the party against whom the rule is being applied relied on the former rule. Well, Mr. Miguel relied on the pre-Y.L. state of the law in making the very most important decision of his life, whether to plead to this aggravated felony. That was a decision that now could lead to his return to Guatemala and could literally cost him his life. The degree of burden which a retroactive order imposes on a party, again, in this case the burden of applying this decision retroactively to Mr. Miguel is immense, because the BIA has already determined that there's a probability that his life or freedom will be threatened if he's returned to Guatemala. Now, the government, in its brief, ignores this. It says the opposite. This is on page 30. It completely misreads the record. It says that there's never been any such finding. That's just wrong. And then finally, you know, the issue is the, you know, what interest does the government have in applying this rule retroactively? Their interest is minimal, because if this rule is not applied retroactively to somebody like Mr. Miguel, what's the result? The result is we apply the frontescue factors, which means the immigration judge has to consider all the facts and circumstances underlying this particular conviction. I find it's inescapable to me how the government suffers great prejudice by having an immigration judge require all the facts and circumstances underlying this case. And I think I'd like to reserve the balance of my time. Okay. Ms. Parsons. Good morning, Your Honor. Cynthia Parsons for the Secretary of the Department of Homeland Security. First, regarding the Petitioner's argument just moments ago that the IJ and the BIA found that he would face harm if returned to Guatemala, that is untrue. What the — Where did it find otherwise? Where did it find otherwise? What it found was in one of its earlier decisions, it found that he would face past persecution. However, in the August 13, 2001 decision, which appears at 151 through 154, in which they — the immigration judge incorporates all prior decisions of the prior immigration judges and all the prior proceedings, that immigration judge specifically finds that the Petitioner failed to establish that he faced any risk of future harm in Guatemala. And based on that failure, the immigration judge denied asylum withholding and relief. And the Petitioner does not challenge that finding in his brief. So consequently, because the immigration judge, that is at page 151 through 154 of the record, because the immigration judge in that decision on August 13, 2001, found that the Petitioner would not — could not establish future harm in Guatemala, and because that finding is not challenged, regardless of whether this Court can or should get to the particular serious crime issue or any of the retroactivity, ultraviaries, or any of the other issues, the result is the same. If he can't establish future harm in Guatemala, there is no relief, regardless. Kagan. Hold on one second. If the I.J.'s opinion, you say on August? It is dated August 13, 2001. Yes. At record 151 through 154. Yes. Specifically looking at — actually, it's 1 through 153. Specifically looking at page 153, and there's some discussion of it on the page before, this Court in its 1990s — Hold on a second. I'm sorry. Wait a minute. I'm just — I'm confused. It's not surprising. Okay. What's the page again? The pages are 151 through 154 or 153. And at page 152 and 153, it discusses it. At page 153, the Court states, There is insufficient evidence in this matter for the Court to find that it is more likely than not that the Respondent would be persecuted or tortured in Guatemala in the future. Okay. Then what happened to that on review by the BIA? The BIA — Reverse that. No. The BIA remanded to the immigration judge because matter of Y.L. had come out. Yeah. Can you show me where the BIA didn't undo the withholding ruling? What I believe the BIA did is because matter of Y.L. had come out, it remanded it for consideration under Y.L. to determine if there was particularly serious crime. If I'm not mistaken. I believe that is what the BIA did. Okay. And that would be in its decision of March 2009. Okay. Well, I guess I can read it. I read it differently, but in any event, going to the Petitioner's retroactivity argument, this — the application of matter of Y.L. is not impermissibly retroactive. And plus, we would like to point out that these specific issues that Petitioner now raises before this Court were not raised for the BIA. In the notice of appeal to the BIA, the very final one after Y.L. was applied, the Petitioner argued that the application of Y.L., that in applying Y.L., the immigration judge erred in determining that Petitioner was not a peripheral actor. However, all of these other issues were not addressed. Is this an issue that the BIA can deal with? Even if it were considered to be a constitutional issue, under Silva Calderón, this Court has found that if there are procedural mechanisms by which the BIA can deal with an issue or deal with an alleged problem in an immigration judge's opinion, then even though there may also be constitutional implications, the BIA can do so. Sure. I understand and know that. But how — applied to this case, how could the BIA rectify a retroactivity issue? Well, if the BIA had felt that, for example, that the application of Y.L., that the immigration judge had improperly found the Petitioner to — not to be a peripheral actor, that would have taken care of the issue right then and there. No, but that's not — of course. The BIA could have said you made a — you factually — you goofed factually, so you should have found that he was okay even under Y.L. My question is a little more specific. I don't know the answer, but can the BIA rectify a decision on the footing that it's — the Attorney General's opinion is impermissibly retroactive as applied to a particular Petitioner's case? On that specific issue, no. All right. So if that's true, then we're back to square one. Okay. Which is, is this an impermissible retroactivity issue which is presented to us fair and square? No, it is not. The matter of Y.L., although it did establish a series of criteria, it did not establish any new consequences for that particular crime. And the reason it does not establish new consequences is it could have been considered a particularly serious crime regardless of Y.L. Nothing in Y.L. limited the Attorney General's discretion to find crimes particularly serious. Under 1231b-3, the immigration judge and the Attorney General retained jurisdiction to determine under other circumstances, and this is in the congressional record in establishing 1231b-3, other circumstances under which crimes can be considered particularly serious. Therefore, upon the enactment of IRA-IRA in 1996 and the particularly serious crime statute, which predates his plea, it could have been considered a particularly serious crime under circumstances in the discretion of the Attorney General. So it does not establish any new consequences. At an extreme level of generality, that's obviously correct. The problem is that when you apply the Montgomery Ward factors, aren't you sort of led inexorably to conclude that at a specific level, the Attorney General's cabined discretion significantly, so that rather than having a shot at convincing an I.J. to exercise discretion in his favor, basically has no shot? No, because it does not create an irrebuttable presumption. It does not create a per se rule. It creates a high standard. But it is not irrebuttable and it is not beyond – it does not create a per se presumption. If it did that, then clearly, yes, that would be a problem. Setting a high standard does not make it irrebuttable. It does not make it per se. In this case, it is not irrebuttable. It sets out six factors that one has to meet. And in this case, the record supports the decision of the immigration judge that the Petitioner did not meet one of those factors, and that is that he was not a peripheral actor. And for just a moment, he did – he was more than just a mule. He was the one that initially contacted the Stockton undercover officer. He set up the deal with him in the first instance. In addition, he is the one that contacted the people with the drugs. He is the one that made the sale. He is the one that brought the drugs back to the Stockton undercover officer. And he also acknowledges in his brief that he, the Petitioner, had the most at risk in the deal. Well, if he had the most at risk and he's the one contacting the undercover officer and he's the one buying the drugs and he's the one delivering the drugs, that's clearly more than just a peripheral actor. And therefore – Can I come back? Pardon me? I think we got your point on that. I'd like to go back to sorting out what the BIA has done here on the fear of future persecution. And I call your attention to the BIA's decision, ER90, which – where it says, if an alien such as the respondent in the matter before us has demonstrated past persecution in italicized language, it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim. That presumption may be overcome by showing, by preponderance of the evidence, that there has either been a fundamental change in circumstances such that an appellant's life or freedom would not be threatened. However, considering this case arises under the jurisdiction of the Ninth Circuit and on the record before us, we find the service has failed to rebut the presumption under the new regulations. They remand, as you say, under YSL – under YL. But they say, we shall remand – excuse me – therefore, as the respondent has stated, we shall remand the record to the I.J. to talk about aggravated felony. And you're saying that there isn't a finding of the BIA overruling the I.J. that he hasn't qualified for fear of future persecution? Well, then I would stand corrected. There were a number of BIA opinions, and I apparently misinterpreted that one. However, my argument would be in conclusion that regardless of that – So, look, you're representing the government. This is your case. You're obviously very good. But to make me sit up on the bench to find an error like that doesn't – I don't think that's the highest standard. I apologize, Your Honor. All right. Counsel, I had the same problem. On page 88 of that BIA opinion, the BIA goes to some extent in saying that given the respondent's kidnapping, the experiences of the hands of the guerrillas, we found that he had shown that he had suffered persecution in the past such that his life or freedom was threatened. And then went on in the next paragraph to say that this creates a presumption with burden on the government. I understand, Your Honor. Thank you. Okay. I think your time is up, Mr. Job. I just only want to address the issue of waiver because, again, it's clear here on page 5 of the administrative record. This guy was represented by the Florence Project, a pro bono agency in Arizona. And they filed a short brief with the board on appeal, the ultimate appeal. Page 5 raises the issue that we're raising with regard to the retroactivity question. It says, quote, Respondent accepted a plea bargain for the criminal case in question. His plea at the time did not preclude or materially impede his eligibility for withholding of removal. The effect of the AG decision is to disrupt the settled expectations of the plea bargain and respondent's reasonable reliance on the continued availability of immigration relief by significantly or wholly obstructing respondent's eligibility for withholding of removal. Citing St. Cyr, the application of a matter of Y.L. in the incident case violates fundamental principles of due process and fair notice. It was clearly raised. The board just didn't agree with it. Okay. Thank you. The matter I just argued will be submitted. And we'll next hear argument in Navarrete v. United States.
judges: Hug, Rymer, Fisher